IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

VIDEO GAMING TECHNOLOGIES,
INC., dba VGT, Inc., a
Tennessee Corporation; UNITED
CEREBRAL PALSY OF GREATER
SACRAMENTO, a California Non-
Profit Corporation; WIND YOUTH
SERVICES, a California Non-
Profit Corporation; ROBERT
FOSS, an individual; JOAN
SEBASTIANI, an individual,

     Plaintiffs,

  v.

BUREAU OF GAMBLING CONTROL, a
law enforcement division of the
California Department of
Justice; MATHEW J. CAMPOY, in
his official capacity as the
Acting Chief of the Bureau of
Gambling Control,

     Defendants,

   and

CAPITAL BINGO, INC., a
California Corporation; HAGGIN
GRANT POST NO. 521, THE

No. 2:08-CV-01241 JAM EFB

ORDER GRANTING PRELIMINARY
INJUNCTION

1

1  AMERICAN LEGION, DEPARTMENT OF
   CALIFORNIA, a California Non-
2  Profit Corporation; CASA ROBLE
   HIGH SCHOOL RAMSMEN, INC., a
3  California Non-Profit
   Corporation; MARY BROWN, an
4  individual.

5          Intervenors.

6  _____/

7          Plaintiffs Video Gaming Technologies, Inc., ("VGT"), United

8  Cerebral Palsy of Greater Sacramento ("UCP"), WIND Youth

9  Services ("WIND"), Robert Foss ("Foss"), and Joan Sebastiani

10 ("Sebastiani") brought an action for declaratory and injunctive

11 relief over the threatened seizure of a number of electronic

12 bingo machines.  Plaintiffs allege that the threatened seizure

13 of their machines by Defendants Bureau of Gambling Control and

14 its acting chief, Mathew J. Campoy (collectively, "BGC") violate

15 their rights under the Americans with Disabilities Act ("ADA"),

16 42 U.S.C. §§ 12181 et seq., and under 42 U.S.C. § 1983.  On June

17 5, 2008, the Court issued a temporary restraining order

18 enjoining the seizure and ordered BGC to show cause why a

19 preliminary injunction should not issue.  On June 17, 2008,

20 Capital Bingo, Inc. ("Capital"), Haggin Grant Post No. 521, The

21 American Legion, Department of California ("American Legion"),

22 Casa Roble High School Ramsmen ("CRHS"), and Mary Brown

23 ("Brown") were given leave to intervene.  Plaintiffs and

24 Intervenors now move for a preliminary injunction.  BGC opposes

25 the motion.  For the reasons set forth below, the motion for a

26 preliminary injunction is GRANTED.

27

28

FACTUAL BACKGROUND

VGT and Capital manufacture electronic bingo machines that are used in California charitable bingo parlors.  The machines depict an electronic representation of a bingo card.  Players may also obtain paper cards containing the same information depicted on the screen.  The machines are linked to a common game.  Two or more players must be linked into the game for it to commence.  A computerized number generator draws bingo numbers.  Each player then presses a button to "daub" the corresponding numbers on his or her electronic card.  When a bingo sequence has been achieved, the player must press a button to call bingo or risk "sleeping" the win.  The game cannot end until a player wins.  The house never wins.

In May 2008, BGC served several charitable bingo parlors, including those operated by UCP, WIND, the American Legion, and CRHS, with cease-and-desist orders, identifying the electronic bingo machines as gaming devices and stating that if the devices were not removed within 30 days, criminal prosecution or seizure might follow.

OPINION

Courts consider the following factors in determining whether to issue a preliminary injunction:

> (1) the likelihood of plaintiff's success on the merits;
> (2) the possibility of plaintiff's suffering irreparable
> injury if relief is not granted; (3) the extent to which
> the balance of hardships favors the respective parties; and
> (4) in certain cases, whether the public interest will be
> advanced by the provision of preliminary relief.

United States v. Odessa Union Warehouse Co-op, 833 F.2d 172, 174 (9th Cir. 1987) (citations omitted).  Plaintiffs must show

either "(1) a combination of probable success on the merits and the possibility of irreparable injury or (2) that serious questions are raised and the balance of hardships tips in its favor."  Id.  "These two formulations represent two points on a sliding scale in which the required degree of irreparable harm increases as the probability of success decreases."  Id.

Plaintiffs and Intervenors have demonstrated that irreparable injury will result if Defendants actions are not enjoined and that the balance of hardships tips in their favor. Plaintiffs and Intervenors have also demonstrated that there remain serious questions about whether BGC's threatened seizure of their electronic bingo machines violates the ADA or their constitutional rights.

As a threshold matter, the Court must consider whether it should abstain from consideration of this matter under the Pullman doctrine.  See Railroad Com. of Texas v. Pullman Co., 312 U.S. 496 (1941).  "Pullman abstention is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy that is properly before it."  Porter v. Jones, 319 F.3d 483, 492 (9th Cir. 2003) (internal citation omitted).  "Pullman abstention should rarely be applied."  Id. However, Pullman abstention may be used in the discretion of the trial court when:

> (1) The complaint touches a sensitive area of social policy upon which the federal courts ought not to enter unless no alternative to its adjudication is open.  (2) Such constitutional adjudication plainly can be avoided if a definitive ruling on the state issue would terminate the controversy.  (3) The possibly determinative issue of state law is doubtful.

Smelt v. County of Orange, California, 447 F.3d 673, 679 (9th Cir. 2006).  If a court finds that a Pullman abstention is appropriate, it retains jurisdiction over the matter but refers the state law question to the state court.  Almodovar v. Reiner, 832 F.2d 1138, 1141 (9th Cir. 1987) ("Pullman abstention requires the district court to retain jurisdiction so that the plaintiff may return to vindicate her federal constitutional rights if the state decision does not settle the issues.").

Pullman abstention is not appropriate in this case because the state court's determination would not render a decision by this Court unnecessary.  BGC has already threatened seizure of the Plaintiffs' and Intervenors' electronic bingo machines.  Even if the state court determined that the bingo machines were illegal under California law, Plaintiffs and Intervenors might still be able to maintain their ADA and 42 U.S.C. § 1983 claims, claiming that the enforcement of the law deprived them of their rights.  See Hydrick v. Hunter, 500 F.3d 978, 987 n.6 (9th Cir. 2007) ("Pullman abstention is not appropriate because the driving force behind each of the Plaintiffs' claims is a right guaranteed by the United States Constitution, and state court clarification of state law would not make a federal court ruling unnecessary.").  Because of the nature of the underlying federal claims, the Court does not find abstention to be appropriate in this case.

Furthermore, the determinative issue of state law is not doubtful in this case.  Even BGC admits that bingo is specifically defined by California Penal Code § 326.5.  See Def. Mem. in Opp. III(5).  Because there is clear state law

addressing the relevant issues in this case, Pullman abstention should not be applied.

The second threshold question the Court must address is whether VGT, UCP, and WIND have standing to bring this case. In their First Amended Complaint, Plaintiffs have alleged a violation of their due process rights under the United States and California constitutions and 42 U.S.C. § 1983. Because VGT, UCP, and WIND have property interests in the machines and will be injured if their machines are seized, they have standing to bring this claim.

VGT, UCP, WIND, Capital, American Legion, and CRHS also have standing to maintain an ADA claim. Because all these organizations would suffer from a direct economic injury as a result of the seizure of the electronic bingo machines, and because they directly participate in the activity, they have standing to challenge the seizure under the ADA. See Pierce v. Soc'y of Sisters, 268 U.S. 510, 535 (1925) (operators of a school could assert right on behalf of their students). Because they have standing, VGT, UCP, WIND, Capital, American Legion, and CRHS may also assert the concomitant rights of third parties that would be adversely affected if their challenged failed, in this case, disabled bingo players. See Craig v. Boren, 429 U.S. 190, 195 (1976).

The Court must consider whether Plaintiffs and Intervenors are likely to succeed on the merits, or if they have at least indicated that there are serious question about the merits. Plaintiffs have raised serious questions about whether their electronic bingo machines may be seized.

California Penal Code § 326.5 defines bingo as "a game of chance in which prizes are awarded on the basis of designated numbers or symbols on a card that conform to numbers or symbols selected at random."  Plaintiffs and Intervenors have indicated that users of their machines are given cards from which they can determine whether they have won.  Whether the players choose to use the cards or an electronic depiction of the card is not relevant so long as prizes are awarded based on the card.  Nothing in the letter of the law dictates the pace, nature, or style of bingo games.  See People v. 8,000 Punchboard Card Devices, 142 Cal.App.3d 618, 621 (1983) (rejecting "traditional" definition of bingo).  If Plaintiffs' and Intervenors' machines do comply with § 326.5, BGC's threatened seizure constitutes a due process violation.  Thus, the moving parties have raised serious questions as to whether the BGC's actions violate their constitutional rights.

Plaintiffs and Intervenors have also raised serious questions as to whether enforcement of § 326.5 violates the ADA. 42 U.S.C. § 12132 states:

> [N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

BGC argues that bingo games are not "services, programs, or activities of a public entity" and are therefore not protected by the statute.  However, the Ninth Circuit has found that Title II of the ADA applies not only to voluntary programs, but to the enforcement of laws.  See McGary v. City of Portland, 386 F.3d

1259, 1268 (9th Cir. 2004) (ADA applied to enforcement of municipal ordinance).

BGC also argues that because its policy is facially neutral, it has not discriminated against the disabled.  The Ninth Circuit has specifically rejected this reasoning.  McGary, 386 F.3d at 1265 ("We have repeatedly recognized that facially neutral policies may violate the ADA when such policies unduly burden disabled persons, even when such policies are consistently enforced.")  Although the seizure of bingo machines may be evenly enforced, it may still disproportionately affect the disabled in violation of the ADA.

BGC also argues that there may be other potential reasonable accommodations.  These are facts that should be developed during discovery and fully litigated at a trial.  At this point, however, BGC threatens to seize the machines without any accommodation for disabled players.  Therefore, Plaintiffs and Intervenors have demonstrated that there is a serious question of whether BGC's threatened seizure of their electronic bingo machines violates the ADA.

Finally, the balance of hardships strongly favors the moving parties.  If their machines are seized local charities will lose a major revenue source, the disabled will lose an important form of entertainment, and VGT and Capital Bingo will lose property, the value of which they may not be able to recover from the state.

//

//

//

Accordingly, because the **B**alance of hardships strongly weighs in favor of the Plaintiffs and **I**ntervenors, **N**otwithstanding defendants arguments in opposition, and because serious questions **G**oing to the merits of this case have been raised by Plaintiffs and Intervenors, an **O**rder shall issue granting Plaintiffs' and Intervenors motion for a preliminary injunction. For the time being, electronic **BINGO** shall continue to be played in the charitable bingo halls involved in this action.

ORDER

IT IS HEREBY ORDERED that a preliminary injunction is entered, effective as of June 25, 2008, at 5:00 P.M., restraining and enjoining Defendants and any other person and/or entity or agency acting in concert or participation with them (including, but not limited to, the California Attorney General and any other division or bureau of the California Department of Justice), from enforcing in any manner (including, but not limited to, seizing electronic bingo aids, commencing criminal prosecutions, and halting the play of charitable bingo) the cease-and-desist orders issued by the Bureau on Gilman Street Bingo in Berkeley (served May 12, 2008), the Sacramento Bingo Center in Sacramento (served May 7, 2008), the Mayhew Community Bingo Center in Sacramento (served May 8, 2008), the North Watt Bingo Parlor in Sacramento (served May 8, 2008), the Madison Mall Bingo Center in Sacramento (served May 8, 2008), the American Legion (served on May 13, 2008), and Capital

Freelancers (served on or about May 7, 2008).  No bond is
required.

IT IS SO ORDERED.

Date:June 30, 2008

_____
JOHN A. MENDEZ,
UNITED STATES DISTRICT JUDGE